**Dominick CACOPERDO, Petitioner–Appellant,**

v.

**Peter DEMOSTHENES; The Attorney General of the State of Nevada, Respondents–Appellees.**

No. 93–15794.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1994.

Decided Oct. 4, 1994.

---

506

Ana Colon Aebi and John W. Aebi, Aebi & McCarthy, Carson City, NV, for petitioner-appellant.

Robert E. Wieland, Deputy Atty. Gen., Carson City, NV, for respondents-appellees.

Before: WALLACE, Chief Judge, WIGGINS, Circuit Judge, and TURRENTINE,* District Judge.

WALLACE, Chief Judge:

Cacoperdo was convicted in Nevada state court of ten counts of sexually assaulting his three teenaged stepdaughters. After unsuccessfully pursuing a direct appeal and state habeas corpus relief, Cacoperdo filed a petition for a writ of habeas corpus in federal district court. He now appeals from the district court's order denying his petition. The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253.

To merit federal habeas relief, Cacoperdo must demonstrate that his imprisonment is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Bashor v. Risley*, 730 F.2d

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

1228, 1232 (9th Cir.) (*Bashor*), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). We review the district court's denial of Cacoperdo's petition for a writ of habeas corpus de novo. *Adams v. Peterson,* 968 F.2d 835, 843 (9th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). We hold that Cacoperdo failed to make the required showing and therefore affirm.

## I

■ Cacoperdo argues that the state trial court violated his due process rights by mechanically sentencing him to life in prison on each count without considering either the different facts and circumstances of each count or the possibility of rehabilitation. This claim was not addressed by the district court.

Cacoperdo argues that the issue was "inartfully pled." This is an understatement. In his pro se federal habeas petition, Cacoperdo did not challenge the state trial court's failure to evaluate individually each count when imposing the sentence or its failure to consider the possibility of rehabilitation. These issues were raised for the first time in a Traverse, which the district court allowed Cacoperdo to file in order "to present additional argument and legal authority, but not to raise substantively new issues or claims."

The district court twice ordered Cacoperdo to file a Statement of Additional Claims or Grounds for Relief, and specifically called his attention to a possible additional claim raised in the Traverse. Despite these two orders, Cacoperdo failed to file either an amended petition or a statement of additional claims. The district court then issued an order limiting review to the petition.

■ A Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds. Then the State can answer and the action can proceed. We conclude that Cacoperdo did not properly raise this claim in the district court. Habeas claims that are not raised before the district court in the petition are not cognizable on appeal. *King v. Rowland,* 977 F.2d 1354, 1357 (9th Cir.1992) (*King*).

## II

■ Cacoperdo argues that he was denied due process because the state trial court imposed six of the sentences consecutively, without explaining its rationale or giving any authority in support of its decision. The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus. *Ramirez v. Arizona,* 437 F.2d 119, 120 (9th Cir.1971).

## III

Cacoperdo contends that his sentence constitutes cruel and unusual punishment because he will not be eligible for parole until he has served at least 40 years in prison. This is a severe sentence. But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289–90, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983) (internal alterations omitted).

■ A challenge to the proportionality of a sentence should be analyzed using objective criteria, which include: (1) "the gravity of the offense and the harshness of the penalty"; (2) "the sentences imposed on other criminals in the same jurisdiction"; and may include (3) "the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290–92, 103 S.Ct. at 3009–11.

The Court's most recent opinion addressing proportionality, *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), did not produce a majority opinion on the issue. However, we have held that after *Harmelin,* "only extreme sentences that are grossly disproportionate to the crime" violate the Eighth Amendment. *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.) (*Bland*) (internal quotations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992).

■ Cacoperdo's sentence is neither extreme nor grossly disproportionate to his crimes. Sexual molestation of a child is a very serious offense. Cacoperdo was convicted on ten separate counts, and the record reflects that they were only representative of a pattern of conduct that continued over a six-year period. The impact of these crimes on the lives of the victims is extraordinarily severe. If Cacoperdo is paroled after 40 years, he will have served an average of four years for each count. We conclude that a comparison of the gravity of Cacoperdo's offenses with the harshness of his sentence does not raise an inference of gross disproportionality; therefore, we need not consider the other factors listed in *Solem*. *Bland*, 961 F.2d at 129.

## IV

Cacoperdo makes several arguments that he received ineffective assistance of counsel in violation of the Sixth Amendment. First, he argues that his counsel's failure to renew his motion for psychiatric evaluation and the lack of advocacy on his behalf during the sentencing hearing constitute ineffective assistance of counsel. Cacoperdo did not raise these arguments in the district court until his Traverse. As we have previously explained, a ground for relief is not properly raised in a Traverse. Because Cacoperdo did not properly raise these claims in the district court, they may not be raised on appeal. *King*, 977 F.2d at 1357.

■ Cacoperdo next argues that his counsel's failure to present medical evidence suggesting his lack of sexual drive constituted ineffective assistance. In order to prevail on this claim, Cacoperdo must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91, 104 S.Ct. at 2066. That is certainly true for a decision whether to introduce medical evidence. It is largely a question of professional judgment.

Cacoperdo did not show a lack of a thorough investigation of law and facts. He has thus failed to meet his burden on the first prong of the *Strickland* test.

## V

After making their allegations of sexual abuse, Cacoperdo's three stepdaughters were taken out of the home and made wards of the State. Cacoperdo's counsel attempted to interview the three girls because he feared they were being coerced into testifying. His counsel was permitted interviews in the presence of a state welfare official. Subsequently, counsel filed a motion to conduct interviews outside the presence of a state welfare representative because he felt the representative's presence inhibited the girls. This motion was denied at the beginning of Cacoperdo's preliminary hearing.

Following the preliminary hearing, counsel approached one of the stepdaughters, who had been released as a ward of the State so that she could get married, and asked for an interview. She initially consented, but later her husband informed counsel that she had changed her mind because a deputy attorney general had advised her not to speak with defense counsel without first consulting the deputy district attorney. This advice was given on the misunderstanding that the stepdaughter was still a ward of the State.

Prior to trial, Cacoperdo moved to dismiss the charges relating to the third stepdaughter because the State had interfered with Cacoperdo's right of access to her. The deputy district attorney responded that he had no objection to the defense speaking to any witness, including the third stepdaughter, and that he was not contacted by Cacoperdo's counsel in order to resolve the alleged interference. He stated: "If I can do anything to facilitate setting up interviews and assisting the defense in their efforts to interview them [the stepdaughters] and prepare for the case, I'm willing to do that." The trial court denied Cacoperdo's motion to dismiss.

Cacoperdo now argues that he was denied his Sixth Amendment right to compulsory process, as incorporated into the Fourteenth

Amendment, and his due process right of access to interview government witnesses.

 The Sixth Amendment compulsory process clause "does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining *witnesses in his favor.*" *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (*Valenzuela–Bernal*) (internal quotations omitted, emphasis in original). In this case, the stepdaughters were adverse witnesses. Cacoperdo cannot establish a Sixth Amendment violation simply by stating that he was unable to interview the third stepdaughter. In fact, the stepdaughter had a right not to be interviewed if she so chose. *United States v. Black,* 767 F.2d 1334, 1338 (9th Cir.) (*Black*), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985). There is no showing by Cacoperdo that he was deprived of testimony that would have been *"relevant* and *material* [and] *vital"* to his defense. *Valenzuela–Bernal,* 458 U.S. at 867, 102 S.Ct. at 3446 (emphasis in original). Because Cacoperdo did not make such a showing, his Sixth Amendment compulsory process claim fails.

Thus, Cacoperdo must rely on the Fourteenth Amendment due process clause. We must determine whether the State's interference with Cacoperdo's access to the stepdaughter-witness denied him of a fair trial. Even if the State's interference in this case constituted misconduct, such misconduct had to rise to the level of a constitutional error in order to afford Cacoperdo the habeas relief he seeks.

Initially we conclude, as we have in the past, that "both sides have the right to interview witnesses before trial." *United States v. Cook,* 608 F.2d 1175, 1180 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *Callahan v. United States,* 371 F.2d 658, 660 (9th Cir.1967). However, "abuses can easily result when officials elect to inform potential witnesses of their right not to speak with defense counsel." *United States v. Rich,* 580 F.2d 929, 934 (9th Cir.1978). "Absent a fairly compelling justification, the government may not interfere with defense access to witnesses." *Black,* 767 F.2d at 1337.

 Yet we are aware of no case granting federal habeas relief because a state interfered with a defendant's access to the state's witness. While such interference may be improper, not all such misconduct rises to the level of a due process violation. Due process "guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Valenzuela–Bernal,* 458 U.S. at 872, 102 S.Ct. at 3449, *quoting Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289–90, 86 L.Ed. 166 (1941). Cacoperdo has not demonstrated that the interference with his right of access in this case rose to the level of a constitutional violation.

Cacoperdo's counsel sought to interview the stepdaughters to determine whether they would testify voluntarily at trial or were being coerced to testify by the State. At the initial interviews with a State welfare representative present, counsel confirmed what he subsequently described as "certain misrepresentations of the facts regarding the alleged witness' decisions to testify." During the trial, testimony by the stepdaughters established that law enforcement officers had told them that if they did not testify, they probably would not be able to live with their mother again because she would be with Cacoperdo. Therefore, the record shows that Cacoperdo's counsel was able to elicit the information and testimony that he was seeking from these adverse witnesses. The record also shows that the deputy district attorney had no objection to any further interviewing of any State witness. Cacoperdo has made no showing that additional material and favorable evidence was available or even sought. *Valenzuela–Bernal,* 458 U.S. at 872, 102 S.Ct. at 3449 (due process violation requires "some explanation" of how the witness testimony "would have been favorable and material"). Therefore, Cacoperdo's due process claim fails. Habeas relief is thus unavailable. *Bashor,* 730 F.2d at 1232.

## VI

Cacoperdo argues that he was prejudiced because a witness employed by the Nevada State Welfare Division told the jury that his five stepchildren had been given polygraph examinations. The trial court denied Cacoperdo's motion for a mistrial, but granted his request to strike the testimony and instructed the jury to disregard the witness's comment. Cacoperdo now argues that the corrective instruction was insufficient.

Whether polygraph evidence may be admitted in a state trial is a matter of state law. *Id.* at 1238. We review this issue only to determine whether the comment and allegedly inadequate instruction rendered the trial fundamentally unfair under the due process clause. *Id.*

After reviewing the record, we are satisfied that the reference to the polygraph examinations did not violate Cacoperdo's due process rights. The record shows that the witness did not discuss the results of or give any details about the examinations; she only mentioned inadvertently that they had been given. In addition, each child testified at trial and was subjected to cross-examination, allowing the jurors to make their own credibility determinations. The record also shows that the trial court struck the testimony and gave the corrective instruction exactly as requested by Cacoperdo. He cannot now claim that the instruction was deficient. Cacoperdo has not demonstrated prejudice, let alone that the trial was fundamentally unfair because of this event.

## VII

Cacoperdo argues that the trial court erred in denying his motion for psychiatric evaluation to determine his competency. We have held on direct appeal that the conviction of a defendant while legally incompetent violates due process. *United States v. Lewis,* 991 F.2d 524, 527 (9th Cir.) (*Lewis*), *cert. denied,* —— U.S. ——, 114 S.Ct. 216, 126 L.Ed.2d 172 (1993). However, we also said that due process does not require a court to order a psychiatric evaluation or conduct a competency hearing unless the court has a good faith doubt concerning the defendant's competence. *Id.* "A good faith doubt about a defendant's competence arises if there is substantial evidence of incompetence." *Id.* Similarly, under Nevada law, proceedings must be suspended when there is a "reasonable doubt" concerning a defendant's competence. Nev.Rev.Stat. § 178.405 (1991); *Bishop v. Warden,* 94 Nev. 410, 581 P.2d 4, 5 (1978). For purposes of due process analysis, "reasonable doubt" and "good faith doubt" describe the same constitutional standard. *Lewis,* 991 F.2d at 527 n. 4.

The issue before us on this habeas corpus appeal is whether Cacoperdo's trial was fundamentally unfair because the state trial court denied his motion for psychiatric evaluation. Cacoperdo has not met his burden to show the due process violation. It was only alleged that he "was suffering mental illness at the time the alleged incidents took place and may still be suffering from mental illness." A single conclusory allegation of unspecified mental illness, without more, is not substantial evidence sufficient to raise a reasonable doubt concerning Cacoperdo's competency to stand trial. There is thus no showing that the trial was rendered fundamentally unfair.

Other issues raised by Cacoperdo do not require specific comment and are rejected.

AFFIRMED.