51 F.3d 280
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph P. GUTIERREZ, Petitioner-Appellant,
v.
Robert BORG, Warden; Attorney General for the State of
California, Respondents-Appellees.
 No. 94-55807.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1995.
Decided March 24, 1995.
 
 1
 Before: BEEZER and NOONAN, Circuit Judges, and EZRA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Joseph Gutierrez appeals the denial of his 28 U.S.C. Sec. 2254 habeas petition challenging his convictions for attempted robbery, robbery and kidnapping for robbery. Gutierrez contends that: (1) he was denied his Sixth Amendment right to effective assistance of counsel and the district court erred in failing to allow him an evidentiary hearing as to the ineffective assistance of counsel claims; (2) he was denied due process because of prosecutorial misconduct and the district court erred in denying him an evidentiary hearing on the prosecutorial misconduct claims; (3) the district court erred in concluding the evidence was sufficient to support the kidnap for robbery convictions; (4) he was denied due process in sentencing with regard to the imposition of consecutive sentences; and (5) his sentence constituted cruel and unusual punishment. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 2254, and we have jurisdiction pursuant to 28 U.S.C. Sec. 2253. We affirm.
 
 
 4
 * We review de novo the dismissal of a habeas corpus petition. Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.1987), cert. denied, 488 U.S. 829 (1988). A claim of ineffective assistance of counsel is a legal question also reviewed de novo. Id.
 
 
 5
 Gutierrez makes several arguments that he received ineffective assistance of counsel in violation of the Sixth Amendment. To prevail on a claim of ineffective assistance of counsel, Gutierrez must establish "(1) that counsel's performance fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result would have been different." Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir.1994) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Gutierrez must also overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Morris v. California, 966 F.2d 448, 456 (9th Cir.) (quoting Strickland, 466 U.S. at 689), cert. denied, 113 S.Ct. 96 (1992), (internal quotation marks omitted).
 
 
 6
 The district court denied all of Gutierrez's claims without an evidentiary hearing. An evidentiary hearing is required where "(1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992). The district court must independently review the relevant portions of the state court record before denying a request for an evidentiary hearing. Lincoln v. Sunn, 807 F.2d 805, 808 (9th Cir.1987).
 
 
 7
 Gutierrez contends that his trial counsel, now deceased, was suffering from a terminal illness at the time of trial and therefore was unable to provide effective assistance of counsel. Gutierrez identifies symptoms and incidents to support his claim. According to Gutierrez, his counsel often suffered severe coughing fits during the course of the representation. Gutierrez also contends that his counsel frequently missed appointments and, because of his health problems, was unable to adequately investigate and defend the case. Gutierrez sought an evidentiary hearing on this issue so as to have an opportunity to develop the record as to his counsel's infirmities and their effect on the trial. In support of his claim, Gutierrez alleges that he was prejudiced by specific actions of his counsel that were inadvisedly taken due to his poor health. He also urges that counsel's actions independently rise to the level of ineffective assistance of counsel. We will examine each of those contentions in turn.
 
 
 8
 * Gutierrez alleges that he received ineffective assistance of counsel based on his counsel's failure to challenge an eyewitness identification by Selton, a victim of the kidnap for robbery incident. After the robbery Selton gave the police a description of Gutierrez and identified him in a photo lineup. Selton again identified Gutierrez at trial. Gutierrez contends that Selton's appearance at the arraignment amounted to a suggestive in-court identification. He contends that his counsel's failure to object to the identification on those grounds, and his failure to investigate the photo lineup amounted to ineffective assistance of counsel.
 
 
 9
 An identification will be admitted where "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199 (1972). See also Tomlin v. Myers, 30 F.3d 1235, 1237 (9th Cir.1994) (where an illegal lineup is established, in-court identification is permissible only where clear and convincing evidence establishes that the in-court identification was based on observations other than the lineup). Assuming that Selton's appearance at the arraignment created a suggestive confrontation, the totality of the circumstances support the conclusion that the in-court identification was reliable. Selton was able to provide the police with a description of Gutierrez and later clearly identified him at the photographic lineup. When questioned about the effect of his appearance at the arraignment on his identification of Gutierrez, Selton remained convinced, even after cross-examination by Gutierrez's counsel. Finally, Selton testified that he had an opportunity to see Gutierrez during the initial confrontation as well as periodically in the car while they were talking. Unlike Tomlin, where counsel failed to object to a clearly illegal lineup, elicited testimony about the lineup and there was a serious risk that the defendant was improperly identified, those concerns are not present in this case. Accordingly, neither the identification nor counsel's failure to object was unduly prejudicial to Gutierrez.
 
 
 10
 Further, Gutierrez's claims with regard to the photographic array also do not warrant an evidentiary hearing. Even assuming the array was in some way suggestive, Selton's testimony at trial and his opportunity to view Gutierrez during the crime would have supported the identification. Rather, it appears in the record that counsel did question the witnesses during the preliminary hearing about prior photo lineups. Apparently, he was sufficiently satisfied that he chose not to seek the photographic arrays. Gutierrez was not prejudiced by counsel's failure to object to the identification.
 
 B
 
 11
 Gutierrez's next contention is that his counsel failed to investigate and sufficiently impeach the testimony of his accomplice. Specifically, Gutierrez asserts that McCord is "one of the more notorious Los Angeles County informants." Gutierrez claims that McCord was in collusion with the prosecution to make false allegations against others to protect himself. According to Gutierrez, his counsel failed to sufficiently investigate McCord's activities and acquire information to impeach McCord. He seeks an evidentiary hearing to further establish McCord's history and the impeachment evidence that would have been available had his counsel properly investigated.
 
 
 12
 It is clear from the record that the trial judge knew of McCord's background. Gutierrez's counsel questioned McCord extensively about his role in the crimes and his agreement with the government. Although no testimony was elicited regarding his role as a "notorious Los Angeles County informant," there is no evidence that this testimony would have altered the outcome. After reading the entire court transcript, we believe the trial court was aware of McCord's involvement in the crime and the substantial benefit he had received in testifying. Any additional impeachment evidence was not so critical that its absence was prejudicial to Gutierrez. See United States v. Bosch, 914 F.2d 1239, 1246 (9th Cir.1990).
 
 C
 
 13
 Finally, Gutierrez argues that he was denied effective assistance of counsel because his counsel advised him to waive a jury trial on counts VI to X (the robbery and kidnap for robbery counts). According to Gutierrez, he was advised to waive a jury trial because counsel was suffering from health problems and did not wish to prepare for a jury trial. Gutierrez takes issue with the district court's reliance on reasoning that the asportation defense was technical and better played to a judge rather than jury and seeks an evidentiary hearing to explore the issue. He provides that he was told by counsel to waive a jury trial because he would win favor with the judge by saving the state time and money.
 
 
 14
 Gutierrez characterizes advice to plead guilty to some counts while waiving a jury trial on others as sufficiently unusual to warrant an evidentiary hearing. However, it appears instead that counsel was pursuing a strategy. It is reasonable to advise a defendant to plead guilty on counts where the evidence was clearly incriminating. Further, the decision to recommend a court trial could easily have been based, as the district judge hypothesized, on the technical asportation defense. Indeed, the transcript of the sentencing hearing reflects that counsel argued the lack of the asportation element in asking for a new trial. (E.R. at 59-60). It is also clear that the argument had been made before and had been based on the key case law in the area. (E.R. at 60-61). Therefore, the district court's reasoning that counsel encouraged waiver of a jury because of the technical nature of the asportation element of the crime shows that counsel was not ineffective. In addition, at sentencing counsel argued for a lighter sentence based on the defendant's short trial and guilty plea saving the court's time. (E.R. at 64). It therefore appears that counsel's recommendation to plead guilty to some counts and waive the jury as to others was a trial strategy. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." Gustave v. United States, 627 F.2d 901, 904 (9th Cir.1980) (citation omitted).
 
 
 15
 We conclude that because Gutierrez's allegations, if true, would not entitle him to relief, the district did not err in denying him an evidentiary hearing. We affirm the district court's conclusion that Gutierrez was provided with effective assistance of counsel.
 
 II
 
 16
 Gutierrez also contends that he was denied due process and a fair trial because of prosecutorial misconduct. Gutierrez argues that the district court erred in not granting him an evidentiary hearing on his allegations of prosecutorial misconduct. Specifically, Gutierrez alleges that the prosecutor failed to disclose impeachment evidence with regard to McCord's prior activities as an informant. Gutierrez also claims that the prosecutor engineered the suggestive identification by inviting the victims to the arraignment. Both of his claims are without merit.
 
 
 17
 * In accordance with Brady v. Maryland, due process requires a prosecutor disclose material exculpatory information to the defense. Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady also requires that impeachment evidence be provided because it is evidence favorable to the accused. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir.1987). Evidence is material, however, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Further, "[t]he materiality test is the 'equivalent to the Chapman harmless error test.' " Hendricks v. Zenon, 993 F.2d 664, 673 (9th Cir.1993) (quoting Brown v. Borg, 951 F.2d 1011, 1015 n. 2 (9th Cir.1991)) (citations omitted).
 
 
 18
 Gutierrez claims that the prosecutor's failure to reveal McCord's history as an informer deprived him of valuable impeachment evidence. As discussed above, the record reflects that the trial court was aware of McCord's criminal history and his involvement in the incident with Gutierrez. That knowledge alone is sufficient for the trial judge to view any testimony of McCord with some scepticism. Had the evidence been disclosed the outcome would not have been different, especially in light of the other evidence against Gutierrez.[1] We affirm the district court's conclusion that the failure to disclose the impeachment evidence was not prejudicial.[2]
 
 B
 
 19
 Gutierrez also contends that the prosecutor orchestrated the victim's presence at the arraignment, resulting in an improper identification. Although prosecutorial misconduct may result in a denial of due process, to do so the misconduct "must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)) (internal quotation marks and further citation omitted).
 
 
 20
 Because Selton's identification was unaffected by his presence at arraignment, the trial judge's reliance on the identification was not unreasonable nor prejudicial to Gutierrez. Further, as the district judge noted, there is apparently no evidence in the record that the prosecutor knew of or encouraged Selton's presence at the arraignment. An evidentiary hearing is unwarranted because regardless of the prosecutor's actions, the presence of the witness at the arraignment apparently did not effect the identification and did not prejudice the trial through prosecutorial misconduct. Because Gutierrez was not denied a fair trial, the district court's denial of an evidentiary hearing is affirmed.
 
 III
 
 21
 Gutierrez also contends that he was deprived of due process and a fair trial. According to Gutierrez, there is insufficient evidence to support his kidnap for robbery convictions. Additionally, Gutierrez argues that errors in sentencing denied him due process. Specifically, he argues that the trial judge erred in imposing consecutive sentences without providing the required statement of reasons and that the sentence constituted cruel and unusual punishment because it was disproportionate to the severity of the offense.
 
 
 22
 * In a habeas corpus proceeding, a review of the sufficiency of the evidence requires that we view the evidence in the light most favorable to the prosecution to determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir.) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 115 S.Ct. 170 (1994). Gutierrez contends that the evidence was insufficient to establish the asportation element of the kidnap for robbery offense. In California, kidnap for robbery requires that the movement of the victims be more than merely incidental to the robbery and that it substantially increase the risk of harm to the victims above that normally present in a crime of robbery alone. People v. Daniels, 459 P.2d 225, 238 (Cal.1969) (en banc). "The crucial inquiry under Daniels is whether a defendant, in the course of his asportation of the victim for purposes of robbery, has created a situation having a substantially increased potential for serious harm to the victim." People v. Lara, 528 P.2d 365, 369 (Cal.1974).
 
 
 23
 Gutierrez argues that his action did not involve a substantial increase in harm and, therefore, asportation was not established. Here, the victims were driven less than a mile from the restaurant where they were abducted. During the drive, the victims were threatened with the firearm and taken to an isolated area where the actual robbery took place. Gutierrez's argument that this movement in fact decreased the risk of harm is untenable. The use of the firearm, coupled with the short drive, is sufficient to satisfy the asportation requirement under California law. Holding the victims at gunpoint while traveling the short distance was sufficient to substantially increase the risk of harm to the victims. See People v. Stephenson, 517 P.2d 820, 824-25 (Cal.1974) (finding that movement of five or six blocks was sufficient to satisfy the asportation requirement of the kidnap for robbery offense), overruled on other grounds by, People v. Pope, 590 P.2d 859 (Cal.1979) (en banc). Accordingly, sufficient evidence supported Gutierrez's conviction of kidnap for robbery.
 
 B
 
 24
 Gutierrez also contends that he was denied due process of law because the trial judge imposed consecutive sentences without an adequate statement of reasons. We recently concluded, however, that "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." Cacoperdo, 37 F.3d at 507 (citation omitted).
 
 C
 
 25
 Gutierrez's claims that his sentence constitutes cruel and unusual punishment is also without merit. Gutierrez was sentenced to "84 months as a fixed term in counts I through VI ... two concurrent life sentences are to be consecutive to the 84 months ... and the additional 24 months consecutive to the life sentence in counts IX and X." (E.R. at 83-84.) Although a severe sentence, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-90 (1983) (internal alternations and emphasis omitted).
 
 
 26
 We have held that " 'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment." Cacoperdo, 37 F.3d at 507 (quoting United States v. Bland, 961 F.2d 123, 129 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992)). To determine proportionality, a court must examine: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and may include (3) 'the sentences imposed for commission of the same crime in other jurisdictions.' " Cacoperdo, 37 F.3d at 507 (quoting Solem, 463 U.S. at 290-92).
 
 
 27
 Gutierrez's sentence is not disproportionate to his crimes. Gutierrez pleaded guilty to robbery and attempted robbery and was convicted of robbery and kidnap for robbery, all involving the use of a firearm. The trial court further considered his prior offenses involving explosives and arson and found a pattern of violent conduct. (E.R. at 77-79.) The court also concluded that Gutierrez "assumed a position of leadership or dominance in the offenses." (E.R. at 79.) Based on the crime and the factors considered by the trial judge, Gutierrez sentence is not grossly disproportionate. Therefore, the other factors listed in Solem need not be considered. See Cacoperdo, 37 F.3d at 508.
 
 IV
 
 28
 Gutierrez was provided effective assistance of counsel. After reviewing the entire record it does not appear that counsel's alleged poor health affected his performance at trial. It is also clear that any alleged prosecutorial misconduct did not deprive Gutierrez of a fair trial. Further, sufficient evidence supported his conviction for kidnap for robbery and his sentence did not violate due process nor constitute cruel and unusual punishment.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Gutierrez's reliance on United States v. Brumel-Alvarez, 991 F.2d 1452 (9th Cir.1993), is misplaced. In Brumel-Alvarez, the government withheld a memorandum, written by a government agent, that went on at length about the character and actions of the key witness, a confidential informant. We examined the memorandum and found its contents important to impeach the confidential informant, as well as the author, a government agent and witness, and another agent who participated in the investigation. We then concluded that the evidence withheld from the defendants would have affected the trial and therefore was a violation of Brady and Jencks. In this case, however, the information withheld would have been used solely to impeach McCord and it clearly was not of the same explosive effect as the memorandum withheld in Brumel-Alvarez. Accordingly, Brumel-Alvarez is not dispositive in this case
 
 
 [2]
 Gutierrez urges that we view the cumulative effect of the errors in determining prejudice. The cumulative effect of the alleged errors, however, was not so prejudicial to warrant reversal. See United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988)