**Albert Donald TRAVASSO, Petitioner,**

v.

**Linda CLARK, Warden, Respondent.**

### No. C 99–5350 CRB (PR).

United States District Court,
N.D. California.

March 30, 2001.

Albert D. Travasso, Santa Rosa, CA, pro se.

Morris Beatus, Esq., CA State Attorney General's Office, San Francisco, CA, for respondent.

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

BREYER, District Judge.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the validity of his guilty plea in the Superior Court of the State of California in and for the County of Santa Clara. He claims that his plea was not valid because the trial court misadvised him on the sentence he faced if he risked going to trial and because he entered the plea without effective assistance of counsel. Per order filed on February 24, 2000, the court found that the claims were cognizable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.[1]

### STATEMENT OF FACTS

On the night of May 30, 1997, petitioner was identified by a City of San Jose police officer as matching the description of a person involved in a disturbance at Yokohana Restaurant. The officer observed petitioner driving westbound on Jackson Avenue, parking and walking towards Yokohana Restaurant. The officer made contact with petitioner and noticed that petitioner appeared to be under the influence of alcohol. Petitioner failed field sobriety tests and was placed under arrest. He was later tested with the result of a blood alcohol level of .22. A records check revealed that petitioner had a suspended driver's license, four prior convictions for driving under the influence of alcohol and was on parole.

### STATEMENT OF THE CASE

On September 3, 1997, petitioner was charged by first amended felony complaint in municipal court and by information in superior court with five counts: driving under the influence of alcohol ("DUI") with three or more prior DUI convictions (Cal. Veh.Code §§ 23152(a), 23152(b)), felonies (counts 1 and 2); driving on a suspended

---

1. Petitioner moved to compel certain discovery shortly after he filed his traverse; however, he recently informed that court that he wished to withdraw the motion and receive a prompt ruling on the merits of his petition. The motion is DISMISSED as moot.

license (Cal. Veh.Code § 14601.5(a)), a misdemeanor (count 3); and driving on a suspended/revoked license for DUI conviction (Cal. Veh.Code § 14601.2(a)), misdemeanors (counts 4 and 5). In addition, the complaint and information alleged two prior "strike" convictions under California's Three Strikes Law (forcible rape and attempted burglary of an inhabited dwelling house) and an enhancement for a prior felony DUI conviction for which petitioner served a prison term.

On September 12, 1997, the "three strikes" committee of the district attorney's office decided to dismiss unconditionally the strike prior for attempted burglary. The decision was unrelated to plea negotiations.

On November 12, 1997, petitioner entered a negotiated plea of guilty to counts two, three and four, and admitted the strike prior for forcible rape and the prison term prior for felony DUI. The strike prior for attempted burglary was stricken and counts 1 and 5 were dismissed.

The trial court advised petitioner that, "as the case is charged, if you were convicted, you would be sentenced to prison for a term of 25 years to life." Under the plea, the court advised him that his sentence could range from a minimum of 32 months to a maximum of seven years. After further advisements, including the admonishment that "unless the court strikes the [remaining] strike prior you are facing a mandatory prison sentence in this case," petitioner waived his rights and entered his plea and admissions.

On January 23, 1998, petitioner (represented by the public defender) moved to withdraw his plea on the ground that his attorney, Ben Koller, had misled him. Petitioner alleged that Koller had lead him to believe that he faced a life sentence unless he pleaded guilty, and that under the plea he "had a good probability to receive local time rather than state prison and that he would probably receive no more than 32 months in state prison." The trial court held a hearing at which several witnesses, including petitioner and Koller, testified. At the end of the hearing, the court denied the motion.

On April 3, 1998, Koller appeared on behalf of petitioner for sentencing. He asked the court to exercise its discretion and strike the remaining strike prior. The court declined to strike the remaining strike prior and proceeded to sentence petitioner to the middle term of 4 years for the felony DUI (count 2) with a strike prior and a one year enhancement for the prior prison term allegation, for a total term of 5 years in state prison. (For the misdemeanors (counts 3.and 4), the court imposed 6 months in county jail, but gave 6 months credit for time served and otherwise suspended imposition of sentence.) A certificate of probable cause to appeal was denied.

Petitioner nonetheless appealed and was assigned appellate counsel. Counsel first sought a writ of mandate from the California Court of Appeal ordering the superior court to issue a certificate of probable cause to appeal on the ground that petitioner was misadvised by the court at the plea hearing that he would be facing a 25–year–to–life term if convicted of the charged offenses when the maximum sentence he could have received was in fact seven years. The petition was summarily denied on January 7, 1999. The state supreme court denied review on March 17, 1999.

Appellate counsel then filed a brief under *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979), finding no arguable issues and requesting the state court of appeal to review the record independently. The state court of appeal did so and, on October 9, 1999, also found

no arguable issue on appeal. Petitioner did not seek review.

Petitioner, proceeding pro se, also sought collateral relief from the state courts by filing petitions for a writ of habeas corpus in the state superior, appellate and supreme courts. He filed his final state petition for a writ of habeas corpus in the Supreme Court of California on August 23, 1999. It alleged that counsel was ineffective in explaining and advising him in connection with the negotiated plea. The petition was summarily denied on November 23, 1999. The instant federal petition followed.

## DISCUSSION

### A. *Standard of Review*

■ This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

■ The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

■ "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529

U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

■ "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 1521.

■ In our circuit, a state court decision may be disturbed as involving an "unreasonable application" of clearly established federal law only if the federal habeas court reviewing the state court decision is left with a "definite and firm conviction" that an error was committed—in other words, "that clear error occurred." *Van Tran v. Lindsey*, 212 F.3d 1143, 1153–54 (9th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

■ Where the state court does not articulate a rationale for its decision, a federal court must conduct "an independent review of the record" to determine whether the state court "clearly erred" in its application of controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000).

### B. *Analysis*

■ Petitioner claims that his plea was not valid because: (1) the trial court misadvised him on the sentence he faced if he risked going to trial, and (2) he received ineffective assistance of counsel.

## 1. *Judicial Misadvisement*

At the beginning of the November 12, 1997 plea hearing, it was made clear that petitioner, upon the advice of counsel, would plead guilty to one count of felony DUI and misdemeanor charges of driving with a suspended license. It was also made clear that petitioner would admit the prison term prior and the strike prior for rape, and that the prosecution would strike the strike prior for attempted burglary. Nov. 12, 1997 Rep. Tr. at 1–2. The court obtained petitioner's assurance that he was satisfied with counsel's advice and the following colloquy transpired:

> THE COURT: As the case stands now, as the case is charged, if you were convicted, you would be sentenced to prison for a term of 25 to life. You have to do 85 percent of that. As the district attorney has stated, your priors are a strike, your exposure is double whatever the sentence would be. I think drunk driving, super deuce, drunk driving with three priors, it doubles the sentence, so it would be sixteen, two, three—six, four, 32 months, is the maximum. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You'll be sent to prison, and upon your release from prison you'll be subject to three years of parole supervision. If you violate the terms and conditions of parole, you can return back to prison a year for each parole violation. Do you understand that?
>
> THE DEFENDANT: Yes
>
> THE COURT: Since this is a felony, you'll be precluded from owning or possessing a firearm. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Court would have to impose a restitution fund fine of not less

> than 200 nor more than $10,000. Your driving privilege will be revoked. Court would have to impose a general fund fine of not less than $390 nor more than $10,000.
>
> Are there other ramifications?
>
> MR. KOLLER [ (petitioner's counsel) ]: Your honor, with the prison prior charged it is 32 months, four years or six, plus possible one year added on to each of those ranges.
>
> THE COURT: So seven years would be the max.
>
> MR. SLOANE [ (prosecutor) ]: Yes.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Yes.

*Id.* at 2–4. After further advisements, petitioner waived his rights and entered his plea and admissions. The court found that he did so "freely and voluntarily" and "knowingly and intelligently." *Id.* at 11.

Petitioner claims that the trial court incorrectly advised him that he faced a 25–year–to–life term if convicted as charged because the maximum sentence he could have received was in fact seven years since the district attorney already had stricken one of the two strike priors independent of the plea bargain. According to petitioner, this judicial misadvisement caused him to enter a plea that was not knowing and intelligent, and which he would not have entered if correctly advised. The California courts summarily rejected the claim.

 The long-standing test for determining the validity of a guilty plea is " 'whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).[2] A

---

**2.** The terms "intelligent" and "knowing" are often used interchangeably. *Compare Hill,* 474 U.S. at 56, 106 S.Ct. 366 ("voluntary and

intelligent") *with Parke v. Raley,* 506 U.S. 20, 28, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) ("knowing and voluntary").

guilty plea is invalid if it is " 'induced by promises or threats which deprive it of the nature of a voluntary act.' " *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir.1986) (quoting *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). It is also invalid "if a defendant does not understand the charges against him or the possible punishment he faces." *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A defendant must be advised of the range of allowable punishment that will result from his plea. *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir.1988).

Petitioner's claim that the trial court's statement that he faced a 25–year–to–life term if convicted as charged rendered his plea "not knowing and intelligent" is without merit. The record shows that petitioner understood the specific charges he was admitting and that he was properly advised that his plea would subject him to a maximum term of seven years. Any confusion caused by the court's initial statement as to the range of punishment petitioner originally faced was cured by the court's subsequent and correct advisements. The trial court's finding that petitioner comprehended the nature and consequences of his plea is fully supported by the record. *Accord Iaea*, 800 F.2d at 866. It cannot be said that the state courts "clearly erred" in summarily rejecting petitioner's claim. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000).

Petitioner also claims that he would not have entered his plea if correctly advised by the trial court. He argues that the trial court's statement that he faced a 25–year–to–life term if convicted as charged improperly induced him to plead guilty because it incorrectly lead him to believe that he was otherwise facing a life sentence. The problem with petitioner's argument is

that his testimony in state court contradicts his claim that it was the trial court's misadvisement which induced him to accept the plea. Petitioner's testimony at the February 20, 1998 hearing on his motion to withdraw his plea established that his plea rested solely on his counsel's advice and that he had decided to plead guilty *before* the plea hearing (and challenged judicial misadvisement). *See* Feb. 20, 1998 Rep. Tr. at 20–26. In view of the record, it cannot be said that the state courts "clearly erred" in later summarily rejecting petitioner's claim that it was the trial court's misadvisement which induced him to plead guilty. *See Delgado*, 223 F.3d at 982. Petitioner's remedy lies in attacking the advice he received from counsel. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.").

### 2. *Ineffective Assistance of Counsel*

To demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In order to establish ineffective assistance of counsel here, petitioner must show that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases *and* that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial. *Id.* at 58–59, 106 S.Ct. 366; *Iaea v. Sunn,* 800 F.2d 861, 864–66 (9th Cir.1986).

Petitioner claims he received ineffective assistance of counsel when Koller: (a) erroneously advised him that he faced a 25–year–to–life sentence if he did not plead guilty; (b) failed to explain to him that under the plea bargain he faced a maximum sentence of seven years, rather than six; (c) erroneously advised him to admit an outdated prior in connection with the misdemeanor count of driving on a suspended license; and (d) failed to move to suppress petitioner's blood sample used to determine his blood alcohol level.

### a. *Advice on maximum sentence without plea*

■ Petitioner claims Koller erroneously advised him that he faced a 25–year–to–life sentence if he did not plead guilty and risked going to trial. According to petitioner, Koller did not inform him before he entered his plea that one of the strike priors had been stricken unconditionally by the district attorney's office and therefore the maximum sentence he could have received was seven years, not 25 years to life. Petitioner contends he would have insisted on going to trial if Koller had properly advised him that he faced a maximum term of seven years, rather than 25 years to life.

At the February 20, 1998 hearing on petitioner's motion to withdraw his plea, petitioner testified that Koller first told him that the district attorney had offered a 32–month sentence in return for a guilty plea. Feb. 20, 1998 Rep. Tr. at 17–18. However, Koller later told petitioner there was no chance of a 32–month deal: The "deal with the district attorney is going to be [a] six month bottom ... and six years top sentence." *Id.* at 20. The 32–month offer "no longer stands." *Id.*

Petitioner was contradictory as to what Koller told him regarding the role of the charged strike priors in the plea negotiations. He testified that Koller told him he would be "facing 25 to life if found guilty in a jury trial"; however, he also testified that Koller told him there would only be one strike regardless of any plea. *Id.* at 21. Petitioner testified as follows:

Q What did [Koller] tell you were your options in the case?

A Then he told me the options were, I hate to see you throw your whole life away. You're facing 25 to life if found guilty in a jury trial and this is the best offer we can get. You'll have a six month bottom and six year top, what he told me.

Q Did he tell you anything about what the prosecution intended to do with respect to either of the two strikes or prior serious felony convictions that were alleged?

A Yes, he said they were willing to drop one of the strikes.

Q Did he tell you they were willing to do this unconditionally or only as part of a plea bargain?

A He didn't state that. Didn't state either one.

Q Did you have the impression if you failed to plead guilty, the prosecution would proceed with both strikes?

A No, no. He told me the[re] would only be one strike.

Q Did he tell you the prosecution would as a matter of their perception of the interest of justice would be striking or dismissing one of the strikes?

A Yes.

Q Did he tell you there were no conditions attached to them doing that?

A If I'm understanding it correctly, yes.

Q What was his advice to you as to what you should do with the case once

the prosecution had dismissed the strike? Did he advise you to take the case to trial or to plead guilty in some fashion?

A He told me he couldn't make up my mind for me at the time. He said, "I hate to see you throw your whole like away." Basically the ultimatum was 25 to life or take this deal, six months to six years.

*Id.* at 21–22.

Koller testified that he never told petitioner there was an offer to settle the case for 32 months; rather, he conveyed to petitioner that "the way the offer is formulated," there was a "minimum" of 32 months. *Id.* at 48. Koller explained that the sentencing court had authority to strike the remaining strike prior and thereby possibly impose a better sentence. *Id.* Koller advised petitioner that under the terms of the final plea bargain he faced a minimum sentence of six months and a maximum sentence of six years. *Id.* at 48–49. (Koller conceded that he was mistaken about the maximum possible sentence, which was actually seven years. *Id.* at 49.) Although the plea was unconditional and could lead to the maximum sentence then at play (seven years), Koller testified that he recommended the deal because he believed the court could be convinced to strike the remaining strike prior and impose a lesser sentence by means of the probation report and character letters sent on behalf of petitioner. *Id.* at 57–58.

Importantly, Koller made clear that he never told petitioner he had to plead guilty in order to get one of the strike priors stricken and thereby avoid the possibility of a life sentence. *Id.* at 49. Koller in fact noted that he and petitioner "discussed the district attorney's indication ... [that] they were going to strike a strike which meant [petitioner] was looking at a two strike case where the normal sentence would be doubled." *Id.* at 53.

At the end of the hearing, the state court rejected petitioner's claim by implicitly finding, after hearing contradictory testimony from petitioner and Koller, that Koller informed petitioner before entry of the plea that the district attorney's office would strike one of the strike priors unconditionally and therefore petitioner was looking at a two strike case where the normal sentence is doubled rather than a three strikes life sentence. Put differently, the court believed Koller's testimony that he never told petitioner he had to plead guilty in order to get one of the strike priors stricken and thereby avoid the possibility of a life sentence. This factual finding by a state court is "presumed to be correct" and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not done so. His simply asserting again in federal court that Koller misinformed him that he would face a life sentence if he did not plead guilty will not do. *See, e.g., Bragg v. Galaza,* No. 99–16636, 2000 WL 33224804, at *3 (9th Cir. Mar.12, 2001) (conclusory assertions of conflict of interest insufficient to rebut presumption of correctness under § 2254(e)(1) and obtain habeas relief). Petitioner is not entitled to federal habeas relief on this claim. *See id.*

This conclusion is supported by the state courts' rejection of petitioner's claim on state habeas as well. In a written decision, the Superior Court of the State of California in and for the County of Santa Clara rejected petitioner's claim on the ground that he "has ... not shown that his counsel misinformed him." *In re Travasso,* No. 198859, slip op. at 2 (Cal.Super.Ct. May 20, 1999). The court reasoned that petitioner's mere assertion that counsel had misinformed him was insufficient to establish ineffective assistance of counsel.

*See id.* at 2–3. The state appellate and supreme courts subsequently summarily denied petitioner's claim. In view of the record, especially petitioner's contradictory testimony and Koller's testimony contradicting petitioner's claim, it cannot be said that the state court "clearly erred" in rejecting petitioner's claim. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *see also Torres v. Prunty,* 223 F.3d 1103, 1107–08 (9th Cir.2000) ("clearly erroneous" standard of unreasonableness that applies in determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in determining the "unreasonable determination of the facts in light of the evidence" under § 2254(d)(2)).

 b. *Advice on maximum sentence with plea*

█ Petitioner claims Koller failed to explain to him that under the plea bargain he faced a maximum sentence of seven years instead of six because of an additional one-year enhancement. Petitioner contends Koller's erroneous advice rendered his plea not "knowing or intelligent."

It is undisputed that Koller incorrectly advised petitioner before he entered his plea that under the terms of the final plea bargain he faced a maximum sentence of six years. *See* Feb. 20, 1998 Rep. Tr. at 48–49. However, the record makes clear that at the plea hearing the court and Koller clarified that the maximum sentence petitioner faced was seven years:

 MR. KOLLER: Your honor, with the prison prior charged it is 32 months, four years or six, plus possible one year added on to each of those ranges.

 THE COURT: So seven years would be the max.

MR. SLOANE [ (prosecutor) ]: Yes.

 THE COURT: Do you understand that?

 THE DEFENDANT: Yes.

Nov. 12, 1997 Rep. Tr. at 3–4. Petitioner was well aware of the full consequences of his plea and admissions. *Cf. United States v. Littlejohn,* 224 F.3d 960, 971 (9th Cir. 2000) (contemporaneous assertions of voluntariness by defendant and his attorney reveal that acceptance of plea agreement and waiver of appeal were voluntary despite failure of district court to warn defendant of certain direct consequences).

Koller's incorrect advice was further remedied by the sentencing court's decision not to sentence petitioner to a term greater than the six years Koller informed petitioner was the maximum sentence he faced. The prosecutor put it this way:

 During the course of the hearings held in this Court with respect to [the defendant's motion to withdraw his plea], the Court was informed by the defendant that it was his view that the maximum he could receive pursuant to the plea bargain was six years rather than the seven he statutorily able to receive.

 As a result, I would ask the Court not impose the full seven year term, even though it's a very aggravated case because he was on parole for two felony duces, and instead, consider six years as his top in the interests of fairness to the defendant in terms of what he testified to the Court.

Apr. 3, 1998 Rep. Tr. at 8–9. The court agreed and sentenced petitioner to five years, *id.* at 9, well within the range Koller informed petitioner the sentence would fall. Petitioner is not entitled to federal habeas relief on this claim.[3]

---

**3.** Although petitioner does not argue that he would not have pleaded guilty but for Koller's erroneous advice on the maximum sentence under the plea bargain, any such claim fails. There is no showing or indication in the rec-
ord that petitioner would not have pleaded guilty and instead would have insisted going to trial had counsel simply informed him that the maximum sentence under the plea bar-

### c. Advice on count of driving on suspended license with prior

 Petitioner claims Koller erroneously advised him to admit an outdated prior in connection with the misdemeanor count of driving on a suspended license (Cal. Veh.Code § 14601.5(a)). Petitioner's claim is without merit.

California Vehicle Code section 14601.5 provides that any person convicted of driving on a suspended license under section 14601.5 shall be punished as follows:

(1) Upon a first conviction, by imprisonment in the county jail for not more than six months or by a fine of not less than three hundred dollars ($300) or more than one thousand dollars ($1,000), or by both that fine and imprisonment.

(2) If the offense occurred within five years of a prior offense which resulted in a conviction for a violation of this section or Section 14601, 14601.1, 14601.2, or 14601.3, by imprisonment in the county jail for not less than ten days or more than one year, and by a fine of not less than five hundred dollars ($500) or more than two thousand dollars ($2,000).

Cal. Veh.Code § 14601.5(d).

Petitioner argues that in connection with the count for driving on a suspended license under section 14601.5, Koller erroneously advised him to admit a prior violation of section 14601.1 which was more than five years old. According to petitioner, the prior dating back to August 11, 1990 did not fall within section 14601.5(d)(2).

Count 3 in the First Amended Felony Complaint charged petitioner as follows:

On or about May 30, 1997, in the above named Judicial District, the crime of DRIVING ON SUSPENDED LICENSE, in violation of VEHICLE CODE SECTION 4601.5(a), a Misdemeanor, was committed by ALBERT DON TRAVASSO, who did drive a motor vehicle when his/her driving privilege was suspended and revoked pursuant to Vehicle Code Section 13353.2, with knowledge of the suspension and revocation.

It is further alleged that within seven years, but over five years prior to the commission of the foregoing offense, the said defendant did commit a violation of Section 14601.1 of the Vehicle Code on or about AUGUST 11, 1990, and was duly convicted thereof in the County of SONOMA, State of California, under Docket # 145723.

It is further alleged that within five years prior to the commission of the foregoing offense, the said defendant did commit a violation of Section 14601.2 of the Vehicle Code on or about SEPTEMBER 30, 1996, and was duly convicted thereof in the County of SANTA CLARA, State of California, under Docket # 9611535.

Koller's advice to petitioner that he admit he committed the August 1990 prior "within seven years, but over five years prior to the commission of the foregoing offense," did not constitute deficient performance. The allegation and admission may have been superfluous, but it was not erroneous or prejudicial. Petitioner's September 1996 prior was enough in of itself to subject petitioner to the higher punishment of section 14601.5(d)(2). Petitioner is not entitled to federal habeas relief on this claim.

---

gain was seven years rather than six. *See Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct.

366, 88 L.Ed.2d 203 (1985).

d. *Failure to move to suppress evidence*

 Petitioner claims Koller rendered ineffective assistance when he failed to move to suppress petitioner's blood sample. According to petitioner, the blood sample, which showed a blood alcohol level was .22, was illegally obtained because he was "handcuffed" and "bent over the hood of a police car" while technicians "extracted a blood sample." He also claims that chemical tests on the blood sample were not done "in a medically approved manner."

Respondent argues that petitioner's guilty plea precludes him from arguing that counsel rendered ineffective assistance by not moving to suppress his blood sample. Not so.

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [inadequate]
> . . . .

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Despite petitioner's unconditional guilty plea, *Tollett* allows him to attack his plea by showing that the advice he received from counsel was inadequate. *United States v. Reyes–Platero,* 224 F.3d 1112, 1115 (9th Cir.2000).

Petitioner first raised the claim that Koller was ineffective when he failed to move to suppress his blood sample when he filed his pro se petition for a writ of habeas corpus in the Supreme Court of California, more than a year after the evidentiary hearing on his motion to withdraw the plea. The claim was unsupported by any facts showing that the blood sample was illegally obtained or unreliably analyzed, and was rejected. Here too the claim is largely conclusory.

Although petitioner claims Koller should have filed a motion to suppress his blood sample because he advised Koller of "this illegally obtained blood sample,"[4] petitioner does not demonstrate the existence of any reasonably meritorious ground for suppressing the blood sample. At most, he speculates that challenging the manner in which the blood sample was extracted and the integrity of the tests performed on it may have proved meritorious. This is not enough. In order to establish prejudice from failure to file a motion, a petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. *Wilson v. Henry,* 185 F.3d 986, 990 (9th Cir.1999). Petitioner's mere speculation that a motion to suppress may have proved meritorious is not enough to "affirmatively prove prejudice." *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner is not entitled to federal habeas relief on this claim.[5]

---

4. The record shows that Koller actually filed a motion to suppress all evidence (including the blood sample) on the ground that petitioner's stop and detention was unlawful. The matter was set for hearing, but taken off calendar after Koller spoke with the arresting officer and determined that the motion would not be meritorious. *See* Feb. 20, 1998 Rep. Tr. at 51–52.

5. Petitioner's failure to present and develop a factual basis for this claim at the state court level also appears to preclude habeas relief in federal court. *See* 28 U.S.C. § 2254(e)(2); *Baja v. Ducharme,* 187 F.3d 1075, 1078–79 (9th Cir.1999).

## CONCLUSION

For the foregoing reasons, and after a careful review of the record, the petition for a writ of habeas corpus is DENIED. All pending motions are DISMISSED as moot.[6]

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

---

6. Petitioner appears to raise some allegations/claims for the first time in his traverse. To whatever extent he does so, such allegations/claims are not properly before the court. *See Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (traverse is not proper pleading to raise additional grounds for relief).