**Johnny L. KING, Petitioner–Appellant,**

v.

**James ROWLAND, et al., Respondents–Appellees.**

**No. 91-55818.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 21, 1992.

Decided Oct. 22, 1992.

Johnny L. King, in pro per.

Leslie P. McElroy, Deputy Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before: WILLIAM A. NORRIS, REINHARDT, and TROTT, Circuit Judges.

REINHARDT, Circuit Judge:

Johnny King, a California state prisoner, appeals pro se the dismissal of his habeas corpus petition challenging his conviction for kidnapping, rape, robbery and assault with intent to commit murder. We affirm.

## BACKGROUND

Johnny King was convicted of kidnapping, rape, and assault with intent to commit murder. In a second case, King was convicted of assault upon a police officer. The assault took place while the officer was appearing in court as the investigating officer in a case involving King and a codefendant.

In the kidnapping case, the state court appointed Gomez, a deputy public defender, to represent King. King, however, soon requested and was granted the right to represent himself. On or about October 30, 1978, the court reappointed Gomez. King then physically attacked Gomez in open court.

In response to the attack on Gomez, the trial court ordered that King be placed in leg irons and chains and that he be in those restraints for every court appearance. On November 15, 1978, the court ordered that King's shackles be removed, but the restraints were reinstated after the courtroom assault on the police officer the following day. On May 29, 1978, the court held a hearing regarding the use of restraints on King during his trial. The court ordered that King's leg irons be removed for trial and that King's left hand be cuffed to the arm of his chair. The court also ordered that a special waist chain be applied to King and that his right hand be cuffed to the waist chain.

After King's attack on Gomez, a private attorney was appointed to represent King, but that attorney requested relief after one month. Following a brief period in which King represented himself, a second private attorney was appointed, but as the trial was about to commence, King successfully moved to have him removed. Finally, in September 1979, the court appointed Deputy Public Defender Wisot to the case. Wisot represented King throughout the trial.

At the beginning of closing arguments on December 14, 1979, King tried to change his plea to guilty on all counts on the ground that he believed Wisot was ineffective as counsel. At that point in the trial, King was once again wearing leg irons. The court determined that King was upset with Wisot for refusing to allow him to testify. After listening to King's complaints, the court suggested he discuss the matter with Wisot and continued with the proceedings. At that point, King physically attacked Wisot in front of the jury and the court ordered King removed from the courtroom so that closing arguments could continue.

In a consolidated appeal, the California Court of Appeal affirmed King's convictions in the two cases. King filed a petition in the California Supreme Court for a writ of habeas corpus. After his petition was denied, King filed this petition for a writ of habeas corpus in federal district court. The district court adopted the magistrate's findings and recommendations and ordered that the petition be dismissed. King timely appealed from the order of

dismissal and we granted King's request for a certificate of probable cause.

## DISCUSSION

■ The decision whether to grant or deny a habeas corpus petition is reviewed *de novo*. *United States v. Popoola*, 881 F.2d 811, 812 (9th Cir.1989); *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). However, "[t]o the extent it is necessary to review findings of fact, the clearly erroneous standard applies." *Norris*, 878 F.2d at 1180.

■ King argues, first, that the trial court erred in refusing to declare a mistrial on the ground that a conflict of interest existed between King and Wisot. King's argument has two parts. First, King contends that when the district court appointed private counsel to replace Gomez, it effectively declared a conflict of interest between King and the entire Public Defender's office. Because King did not raise this claim in the district court, it is not cognizable on appeal. *Green v. Christiansen*, 732 F.2d 1397, 1400, n. 1 (9th Cir.1984). In any event, any alleged conflict between King and the entire Public Defender's office arising as a result of King's dispute with Gomez does not give rise to an issue of constitutional proportions.

■ In the alternative, King argues that the trial judge should have recognized that Wisot's dislike and fear of his client severely impaired his ability to represent King. At the very least, King contends that the judge should have inquired into King's numerous complaints about his attorney. When a defendant indicates dissatisfaction with his counsel, the trial court ordinarily must conduct a thorough inquiry in order to discover whether the situation is depriving the defendant of an adequate defense. *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir.1982). However, the inquiry need only be "as comprehensive as the circumstances reasonably would permit." *Id.* at 831. In the case before us, the record demonstrates that an extensive inquiry was not necessary. The judge listened to King's complaints and asked a number of questions. He was familiar with King's previous behavior and with the fact that any lack of communication between King and Wisot was most likely attributable to King. In addition, there is no indication in the record that the strained relationship between King and Wisot prevented Wisot from doing his job properly. Finally, the record of King's behavior strongly suggests that his attempt to remove Wisot was part of a general plan to delay and disrupt the trial and prevent it from proceeding. We conclude that the trial judge did not err in failing to declare a mistrial on the basis of a conflict of interest.

Second, King argues that the state trial court deprived him of a fair trial by physically restraining him during his trial, by surrounding him with three deputy sheriffs, and by isolating him to one side of the courtroom, away from his lawyer. Ordinarily, the fact that King failed to raise an objection to the restraints during the trial would constitute a waiver of the issue. *Estelle v. Williams*, 425 U.S. 501, 512–13, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976). Because the record reveals an ongoing dispute over the restraints to be used on King, however, we will treat the issue as properly raised.

■ "[A] trial court's decision to use shackles [is] reviewed under an abuse of discretion standard." *Stewart v. Corbin*, 850 F.2d 492, 497–98 (9th Cir.1988). Before imposing physical restraints, the trial judge must weigh and consider the benefits and burdens of shackles against the use of other possible alternatives. *Spain v. Rushen*, 883 F.2d 712 (9th Cir.1989). However, a court has an essential interest in preserving the "dignity, order, and decorum" of the courtroom proceeding. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). In particular, shackling of a defendant during a trial is proper where "there is a serious threat of escape or danger to those in and around the courtroom, or where disruption in the courtroom is likely if the defendant is not restrained." *Hamilton v. Vasquez*, 882 F.2d 1469, 1471 (9th Cir.1989) (citing *Wil-*

*son v. McCarthy,* 770 F.2d 1482, 1485 (9th Cir.1985)). In cases of extreme need, shackling may be justified even without first trying all less restrictive measures, particularly when there is a serious threat of danger to those in the courtroom or where disruption is likely. *Wilson,* 770 F.2d at 1485; *see also Loux v. United States,* ·389 F.2d 911, 919 (9th Cir.), *cert. denied,* 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968).

■ The magistrate found, and the record reveals, that King displayed a pattern of disruptive and dangerous behavior, attacking people in the courtroom, verbally abusing the judge, and delaying the proceedings. Even when restrained in leg irons, King was able to attack his own attorney. The magistrate further found that even if the jury did see King's leg irons, they were not sufficiently and constantly exposed to the jury's attention so as to reverse the presumption of innocence. That finding is not clearly erroneous. Indeed, it is likely that King's repeated assaults and disruptions in front of the jury created far more prejudice against him than did the restraints. Moreover, contrary to King's assertions, the trial court did attempt to explore less restrictive alternatives. The court removed or lessened the shackles when it thought King would behave. King, however, repeatedly proved the court wrong by engaging in further disruptive behavior. The use of shackles in this case did not constitute reversible error.

■ The use of three deputy sheriffs to guard King likewise was not improper. The use of security personnel need not be reserved for trials in which there is an essential state interest to protect. *Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46, 89 L.Ed.2d 525 (1986). The standard for analyzing a courtroom arrangement challenged as inherently prejudicial is whether " 'an unacceptable risk is presented of impermissible factors coming into play.' " *Id.* at 570, 106 S.Ct. at 1346 (quoting *Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). The inherent risk of prejudice is not as great from the use of armed security personnel as it is from shackling, because there is a "wider range of inferences that a juror might reasonably draw from the officers' presence." *Id.* 475 U.S. at 569, 106 S.Ct. at 1346. The presence of security guards does not automatically signal that a defendant is dangerous or culpable. The conclusion that the presence of deputy sheriffs was not unduly prejudicial to King follows from our conclusion that the leg irons used on King were not impermissibly prejudicial.

■ Finally, we reject King's argument that the restraints employed by the court deprived him of effective assistance of counsel by separating him from Wisot during his trial. The magistrate concluded that King had ample opportunity to communicate with Wisot when he desired to do so. That conclusion is supported by the undisputed facts. The record reveals that even at the end of the trial King was seated close enough to Wisot that he was able to assault him even though encumbered by leg irons. We conclude that the restraints used on King did not prevent communication between him and his attorney.

AFFIRMED.