108 F.3d 337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Douglas Slade ELLIOTT, Petitioner-Appellant,
v.
Teresa ROCHA, Warden, Folsom State Prison; James H. Garcia,
Respondents-Appellees.
 No. 96-55448.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1996.
Decided Dec. 16, 1996.
 
 Before: CHOY, SNEED, and SKOPIL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Douglas Slade Elliott appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction for murder and kidnapping. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.[1]
 
 
 3
 Elliott raises three issues on appeal. First, he contends that his Miranda rights were violated because he was not informed of his rights at the start of a police interview. Second, he claims that the district court erred in ruling that the imposition of consecutive sentences pursuant to California sentencing law does not constitute a reviewable federal issue. Elliott also argues that his consecutive sentences constitute cruel and unusual punishment. Finally, Elliott claims that the trial court violated due process and the double jeopardy clause by permitting the admission of evidence relating to a past crime he committed.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 Elliott was charged with the murder, forcible kidnapping and robbery of Richard Sherwood. Sherwood was found dead near San Diego, California in March 1983. Elliott, who had since left San Diego and moved to Portland, Oregon, told his drug detoxification counselor that he may have been involved in the incident leading to the victim's death. The San Diego County police were notified and Officers Norman C. Crawford and David G. Decker went to Oregon to interview Elliott. Officer Crawford had known Elliott for approximately eighteen years from prior assignments in California.
 
 
 5
 After greeting Elliott and introducing Decker, Crawford told Elliott he was going to advise him of his rights. Elliott asked if it could wait, because he wanted to "bullshit a little bit first" and talk about other matters. They spoke for four or five minutes, after which Crawford advised Elliott of his Miranda rights. Elliott waived those rights. He was subsequently arrested and charged with the murder, kidnapping and robbery of Sherwood.
 
 
 6
 At trial, another defendant in the case testified on direct examination that she was driven by fear of Elliott to make certain statements to police officers. After cross-examination that called into question the credibility of her statements, the trial court allowed her to testify on re-direct that she was fearful of Elliott because she knew he was involved in a killing in 1963.
 
 
 7
 Elliott was convicted of murder and kidnapping. The court sentenced him to twenty-five years to life for murder, to be served consecutively to a sentence of fifteen years for kidnapping with an injury enhancement.
 
 
 8
 Elliott appealed his conviction. The California Court of Appeals made the following findings: 1) the transcript on which the trial court based its admissibility ruling shows Elliott volunteering information at the interview; 2) the totality of Elliott's answers to questions after being Mirandized consist of his denying involvement in Sherwood's killing and admitting drunken presence in the van; 3) Elliott stopped Crawford from Mirandizing him and displayed a friendly demeanor throughout the interview; and 4) there was no coercion or softening up process and Elliott made a valid waiver of his Miranda rights.
 
 
 9
 Elliott filed a petition for habeas corpus under 28 U.S.C. § 2254 in the district court. The petition was denied and Elliott filed a timely notice of appeal with this court.
 
 STANDARD OF REVIEW
 
 10
 A district court's decision to deny a section 2254 habeas petition is reviewed de novo. Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.1996). The district court's factual findings are reviewed for clear error. Moran v. McDaniel, 80 F.3d 1261, 1268 (9th Cir.1996). Furthermore, a presumption of correctness attaches to the findings of the state court. Id.
 
 
 11
 The standard for determining whether habeas relief should be granted in a section 2254 petition is whether the alleged errors " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, (1946)). Trial errors which do not meet this test are deemed harmless. Rice v. Wood, 77 F.3d 1138, 1144 (9th Cir.1996) (en banc).
 
 DISCUSSION
 I. Miranda Violation
 
 12
 Elliott contends that his Miranda rights were violated because he was questioned prior to the recitation of his rights as required by Miranda v. Arizona, 384 U.S. 436, 479 (1966). Petitioner's Brief 6. Elliott also asserts that Officer Crawford improperly obtained information from him by using coercive measures. Petitioner's Brief 8-9. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980).
 
 
 13
 Miranda claims are cognizable on federal habeas. See Withrow v. Williams, 507 U.S. 680, 695 (1993). The voluntariness of a waiver of Miranda rights is considered a mixed question of law and fact reviewed de novo. Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc).
 
 
 14
 Elliott first claims that he was questioned for one hour before recitation of Miranda. Petitioner's Brief 6. However, a review of the record indicates that after preliminary introductions were made, Officer Crawford attempted to read Elliott his rights but was dissuaded from doing so in order that the two men could "bullshit" for awhile. After several minutes of discussion, Officer Crawford did in fact read Elliott his rights and asked whether Elliott was willing to talk with him to which Elliott agreed. An interview that lasted approximately one hour followed.
 
 
 15
 The pre-Miranda conversation included talk about Elliott's girlfriend, Elliott being treated like a human being, whether Elliott would be handcuffed on the plane back to San Diego, the amount of bail, about the other suspects and the extent of their involvement in the case, and the fact that they had implicated Elliott. After he was Mirandized, Elliott stated he was unable to recall most of what happened in the van because he was drunk but that he did not hit, choke, beat, or burn Sherwood.
 
 
 16
 The statements made by Elliott before he was read his Miranda rights tend to suggest that he was somehow involved in the incident. However, none of the statements amounts to an admission that Elliott participated in any criminal way. Even assuming that Crawford should not have continued with the conversation without insisting that Elliott's rights be read, violations of Miranda rights do not necessarily require reversal. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Elliott must show that these statements had a "substantial and injurious effect" on the jury's verdict. Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). We are not persuaded that these statements had such an effect, particularly in light of the record, which is full of evidence supporting a conviction.
 
 
 17
 Elliott's argument that Crawford coerced him into waiving his rights through the use of a softening-up process likewise fails. A waiver is voluntary if it is the product of free and deliberate choice rather then intimidation, coercion or deception. Moran v. Burbine, 475 U.S. 412, 421 (1986). To determine whether the waiver was made voluntarily, we examine the totality of the circumstances surrounding the waiver, including Officer Crawford's conduct leading up to it and the effect of that conduct on Elliott. See Norman v. Ducharme, 871 F.2d 1483, 1487 (9th Cir.1989); (citing Miller v. Fenton, 474 U.S. 104, 116 (1985)). Such an examination leads to the conclusion that Elliott's waiver was made voluntarily, knowingly and intelligently. As discussed earlier, Officer Crawford and Elliott had known each other for eighteen years. However, there is no evidence that Crawford plied Elliott with friendship to deceive him and obtain statements from him. In fact, Crawford attempted to Mirandize Elliott at the start of the interview. Instead Elliott requested that they converse first, which they did in a friendly and amicable way. Elliott's demeanor toward Crawford remained friendly even after Crawford read Elliott his Miranda rights. The record is devoid of any evidence that Crawford or the other interviewing officer, Decker, used coercion to elicit a waiver from Elliott.
 
 
 18
 Upon de novo review, we find that Elliott voluntarily, knowingly and intelligently waived his Miranda rights and that any statements made prior to Miranda did not have a substantially injurious effect on the jury's verdict. Furthermore, statements by Elliott were not procured by the use of coercion or a softening-up process.
 
 II. Cruel and Unusual Punishment
 
 19
 Elliott claims that the imposition of consecutive sentences, totalling at least forty years in prison, is cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. U.S. Const. amend. VIII. This claim fails on two counts.
 
 
 20
 Firstly, an issue not raised in the habeas petition to the district court is not cognizable on appeal. King v. Rowland, 977 F.2d 1354, 1357 (9th Cir.1992). In his petition to the district court, Elliott claimed that the state court violated section 654 of the California Penal code by punishing him twice for a single act when it sentenced him for both murder and kidnapping under that section. The district court held that this did not present a cognizable federal claim. On appeal, Elliott has couched this complaint as a "violation of the cruel and unusual punishment clause of the Federal Constitution" for "sentencing the petitioner under the same penal code section [ ] in violation of the California Constitution." Petitioner's Brief 12. Because the merits of the "cruel and unusual punishment" issue were not raised in Elliott's district court petition or ruled upon by that court, Elliott may not bring the issue on appeal. See id.
 
 
 21
 Secondly, even if we were to decide the merits of this claim, it would fail because his punishment is not "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271 (1980) (holding that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). Elliott was convicted of murder and kidnapping with an injury enhancement. Elliott does not succeed in arguing that a sentence of forty years to life is grossly disproportionate to the gravity of the crimes he committed, namely murder and kidnapping. Furthermore, Elliott fails to make a showing that the sentence imposed on him is disproportionate to sentences imposed on other criminals who are convicted of murder and kidnapping. See Solem v. Helm, 463 U.S. 277, 291 (1983) (stating that in determining whether the punishment is greatly disproportionate to the crime, compare sentences imposed for other crimes in the same jurisdiction and compare sentences imposed in other jurisdictions for the same crimes).
 
 III. Double Jeopardy
 
 22
 Elliott claims a violation of the double jeopardy clause. This claim is predicated on the trial court's admission of testimony by another defendant stating that she knew Elliott had killed someone before. Elliott argues that allowing the admission of this evidence resulted in a second punishment for the prior crime, for which he was convicted of manslaughter in 1963, in violation of the double jeopardy clause.
 
 
 23
 Double jeopardy protects against successive punishments and successive prosecutions. United States v. Dixon, 509 U.S. 688, 696 (1993). Elliott was sentenced for the murder and kidnapping of Sherwood in 1983; he was not sentenced for the 1963 killing. Even if the sentencing court considered the past criminal behavior when imposing the sentence, this does not violate the double jeopardy clause. See Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 1928 (1994); Missouri v. Hunter, 459 U.S. 359, 366 (1983) (holding that double jeopardy clause protects only against multiple punishments for the same crime). Elliott's claim that he was punished twice for the 1963 crime is meritless.
 
 
 24
 Elliott also states that allowing this testimony into evidence "rendered the trial unfair." Petitioner's Brief 14. If we are to read this as an assertion that his due process rights were violated, the relevant inquiry is whether "the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995) (applying "fundamentally unfair" test to admission of prior conviction for similar crimes, finding no violation of due process). Due process is violated "[o]nly if there are no permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991).
 
 
 25
 The testimony admitted consisted of the following exchange on re-direct:
 
 
 26
 (Q) Your fear of Elliott was based upon knowledge that you had that Mr. Elliott had been involved in the killing of another man sometime before this occassion; isn't that correct.
 
 
 27
 (A) Yes.
 
 
 28
 The evidence was admitted for the limited purpose of establishing the relevant state of mind of the witness. The trial court admonished the jury that the evidence should be used for this purpose only and the trial court barred the prosecutor from stating that Elliott was convicted of manslaughter. The evidence was relevant to show state of mind and its admission was not arbitrary. Neither was the admission "so prejudicial that it rendered the trial fundamentally unfair." Walters, 45 F.3d at 1357.
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We affirm the denial of relief under the former version of 28 U.S.C. § 2254, and therefore do not consider whether the Antiterrorism and Effective Death Penalty Act of 1996 applies to this appeal