**Clark Harold METCALF, Petitioner,**

**v.**

**A.C. NEWLAND, Warden, Respondent.**

**No. CV F 97 6030 OWW HGB P.**

United States District Court,
E.D. California.

Aug. 21, 1998.

Clark Harold Metcalf, Wasco, CA, pro se.

Joan W. Cavanaugh, Atty. Gen. Office of State of Cal., Sacramento, CA, Jeffrey David Firestone, Office of Atty. Gen., Fresno, CA, for Respondent.

### ORDER RE: FINDINGS & RECOMMENDATIONS
### (# 12)

WANGER, District Judge.

Petitioner, a state prisoner proceeding pro se and in forma pauperis, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 616(b)(1)(B) and Local Rule 72–302.

On June 26, 1998, the Magistrate Judge filed findings and recommendations herein which were served on the parties and which contained notice to the parties that any objections to the findings and recommendations were to be filed within thirty (30) days. On July 22, 1998, petitioner filed objections to the findings and recommendations.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 73–305, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and proper analysis.

Accordingly, THE COURT HEREBY ORDERS that:

1. The Findings and Recommendations issued by the Magistrate Judge on June 28, 1998, are adopted in full; and

2. Petitioner's application for a writ of habeas corpus is denied.

### FINDINGS AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS

BEST, United States Magistrate Judge.

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND

In the Superior Court of Kern County, California, case number 51345, petitioner was convicted by jury of two counts of second degree robbery with personal use of a firearm and two counts of possession of a firearm by a convicted felon. In a bifurcated proceeding the trial court found true allegations that petitioner had served three prior prison terms and had a prior serious felony conviction.

On February 5, 1993, petitioner was sentenced to an aggregate term of 15 years and 4 months in state prison.

On petitioner's direct appeal from the judgment, the California Court of Appeal, Fifth Appellate District, in an unpublished opinion filed January 19, 1995, reversed one of the prior prison term findings, but otherwise affirmed the judgment.

The California Supreme Court summarily denied review on March 29, 1995.

Petitions for a writ of habeas corpus were denied by the Kern County Superior Court, and the Fifth District Court of Appeal. A petition for review of the Appellate Court's denial was denied by the California Supreme Court on September 17, 1997.

The instant petition was filed in this court on October 23, 1997, and asserts two grounds for relief; (1) "TRIAL COURT MADE IMPROPER COMMENT ON PETITIONERS DECISION NOT TO TESTIFY", and (2) "Counsel failed to argue the admissibility of a pre trial lineup that was conducted without the presence of defense counsel."

Respondent's answer, filed March 27, 1998, concedes petitioner has exhausted his state court remedies.

Petitioner's traverse was filed on May 4, 1998, and by implication seems to raise new grounds for relief, i.e., prosecutorial misconduct and ineffective assistance of appellate counsel. If this was petitioner's intent, these new grounds must be disregarded. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) ("A Traverse is not the proper pleading to raise additional grounds for relief ... Habeas claims that are not raised before the district court in the petition are not cognizable on appeal."); see also *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir.1992.)

## DISCUSSION

The petition should be denied.

**Griffin error claim**

Petitioner claims the trial court's comments on petitioner's decision not to testify was "constitutionally impermissible" and requires reversal. Those comments were as follows:

THE COURT: ... Ladies and gentleman, at 10[:]45, I was here and so was everybody else and we were just about to bring you in when counsel indicated to me that there was something they needed to discuss with me.

I'll share that with you now.

Mr. Metcalf, after discussing the matter with counsel, has decided that he will not testify.

He will [i]nvoke his constitutional right against self-incrimination. So he will not by testifying.

Reporter's transcript pp. 202–203

In rejecting this same contention, the California Court of Appeal, although finding the trial court's comment impermissibly suggestive that if petitioner testified, his testimony would in fact be incriminating, further found the error to be harmless beyond a reasonable doubt:

The principal issue in most robbery trials is the identity of the perpetrator. Here, the prosecution presented two eyewitnesses to each count of robbery. All of the eyewitnesses identified appellant's photo in a photo line up and also identified him in a live lineup two months after the robberies. All of the identifications were independent of one another. Appellant asserts this was a close case because no physical evidence linked appellant to the robberies. We disagree. Other than an untainted confession, valid eye witness testimony is perhaps the most compelling. Here, there were two eyewitnesses to each robbery. When presented with recent photos in good light for viewing, all of the witnesses identified appellant. Appellant has not contended the identifications were impermissibly suggestive. We conclude that even with the presence of the court's unfortunate reference to appellant's right against self-incrimination, the resulting error was harmless beyond a reasonable doubt upon this record.

Exhibit "4" to respondent's answer, slip opinion p. 6.

Independent review of the record in this case demonstrates the correctness of the Court of Appeal's finding as to the eyewit-

ness identification evidence and as to the overwhelming nature of that evidence.

■■■■ On federal habeas review of Griffin [1] error, the standard of prejudice is less onerous than the harmless beyond a reasonable doubt standard applied by the state courts pursuant to *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The federal courts apply the so-called *Kotteakos* standard holding that reversal is warranted if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Although such error will not be harmless where the federal court has "grave doubt" as to whether the error had substantial and injurious effect or influence on the jury's verdict (*O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)), no room for grave doubt exists in the present case in light of the overwhelming eyewitness identification evidence.

### Ineffective assistance of counsel claim

■■■ Petitioner contends his trial counsel's failure to be present for a pre-trial lineup violated his right to counsel and that counsel's failure to object to the admissibility of the lineup evidence on that ground was a further violation of his right to effective assistance of counsel

Respondent concedes that prior to trial a live lineup was conducted on September 3, 1992, and that while petitioner was represented at that time by Attorney Stan Simrin, Mr, Simrin was not present at the lineup. Respondent also concedes that normally this would make the lineup illegal and preclude the state from adducing any evidence of the lineup at trial. See *United States v. Wade*, 388 U.S. 218, 237, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 273–74, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Respondent argues, however, that

since Roger Ruby, an investigator for Mr. Simrin's office, was present at the lineup as a representative of Mr. Simrin, there was sufficient compliance with the "presence of counsel" requirement.

Although there is no case law supporting respondent's position, it is supported by the force of logic. In requiring the presence of defense counsel at an identification live lineup, the Supreme Court stressed the potential for improper influence or suggestion, either intentionally or unintentionally, inherent in the procedures utilized to conduct the lineup. *Wade*, 388 U.S. at 226–237, 87 S.Ct. 1926. The court also emphasized the inability of the defense to effectively reconstruct at trial any unfairness that may have occurred at or during the lineup:

> In any event, neither witnesses nor lineup participants are apt to be alert for conditions prejudicial to the suspect. And if they were, it would likely be of scant benefit to the suspect since neither witnesses nor lineup participants are likely to be schooled in the detection of suggestive influences. Improper influences may go undetected by a suspect, guilty or not, who experiences the emotional tension which we might expect of one being confronted with potential accusers. Even when he does observe abuse, if he has a criminal record he may be reluctant to take the stand and open up the admission of prior convictions. Moreover, any protestations by the suspect of the fairness of the lineup made at trial are likely to be in vain; the jury's choice is between the accused's unsupported version and that of the police officers present. In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification.

*United States v. Wade, supra*, 388 U.S. at 230–32, 87 S.Ct. 1926.

Respondent notes that Kern County Superior Court Judge James M. Stuart, in ruling

---

1. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) holds that the Fifth Amendment's self-incrimination clause, as applied to the states by the Fourteenth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

on petitioner's habeas petition filed in that court, judicially noticed that "both Mr. Simrin and Mr. Ruby were then and are now experienced and well qualified professionals in their respective fields." Exhibit "14" to respondent's answer, p. 3. Respondent argues that having the investigator substitute for counsel at the lineup to observe the lineup procedures and participants, and any instances of improper influence or suggestion, would have actually allowed defense counsel to reconstruct the lineup through cross-examination of the officers and the testimony of the investigator more effectively than if counsel himself had been present at the lineup. Respondent then suggests, in accordance with the presumption that counsel's performance fell well within the wide range of reasonable professional assistance (*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), that Mr. Simrin could well have had a sound tactical reason for having Mr. Ruby attend the lineup in his stead, "That is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Ibid.*

To show ineffective assistance of counsel in the constitutional sense, petitioner must show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and prejudice, i.e., that but for counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, supra, 466 U.S. at 687, 104 S.Ct. 2052. Even assuming Mr. Simrin's failure to personally attend the lineup amounted to constitutionally deficient performance, that, standing alone, would not be sufficient; petitioner would still have to establish the second prong of the Strickland test, i.e., that he was prejudiced by such failure. This petitioner has failed to do. In fact, Mr. Simrin's failure to be personally present at the lineup presented petitioner with a challenge to the admissibility of evidence of the lineup itself and of the in-court identification by the witnesses who viewed the lineup. Rather than being prejudicial, Mr. Simrin's failure was, thus, potentially favorable to petitioner.

Petitioner was represented at trial by different counsel, Mr. Mark D. Owens, whose performance is faulted because he failed to object to the admissibility at trial of the identification of petitioner at the lineup and to the in court identification of petitioner by the eyewitnesses based upon the illegal lineup.

■ Respondent correctly notes that when an accused is improperly denied representation at a live lineup, testimony that a witness identified the accused at the lineup is inadmissible at trial. *Gilbert v. California*, supra, 388 U.S. at 273–74, 87 S.Ct. 1951. Trial counsel's performance in failing to object to this line up evidence was, therefore, constitutionally deficient. See *Tomlin v. Myers*, 30 F.3d 1235, 1237–39 (1994). However, error in admitting such evidence is not reversible per se; in order to show prejudice petitioner must show a reasonable probability that, "had the government been called to the task, it would have been unable to satisfy *Wade's* requirements: 'to establish by clear and convincing evidence that the in-court identifications were based on observations of the suspect other than the lineup identification.' *Wade*, 388 U.S. at 240, 87 S.Ct. at 1939." *Tomlin v. Myers*, supra, 30 F.3d at 1240.

■ In *United States v. Wade, supra*, the court indicated that the reviewing court can find that a witness's in-court identification of a suspect was independent of an illegal lineup provided the record permits it to make such an informed judgment.

Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are

disclosed concerning the conduct of the lineup.

*Wade,* 388 U.S. at 241, 87 S.Ct. 1926.

Consideration of the *Wade* factors in the present case reveals the following.

There were two eyewitnesses to each of the two alleged robberies. The Court of Appeal found the historical facts regarding the identification of petitioner as the perpetrator to be:

On June 28, 1992, at about 10:55 p.m., a man in a pickup approached the drive-through window at a fast food restaurant in Bakersfield. The man pointed a rifle at the cashier, Mark Long, and demanded money. Long called his manager, Santiago Aguirre. Aguirre saw the man pointing the gun at Long and responded to the demand for money by cleaning out two cash registers totaling about $300.

One week later, Aguirre saw a photo line-up of six suspects which displayed a two-year old photo of appellant. Aguirre said photos Nos. 4 and 5 looked most like the perpetrator, with No. 4 being more like him than No. 5. On July 7, 1992, Long and Aguirre viewed a different photo line-up. The second photo was one of appellant taken three days earlier. Aguirre identified appellant's photo as the robber. Long saw the array first in bright sunlight and was unable to identify anyone. However, when Long viewed the line-up indoors he choose (sic) appellant's photo as the robber. The identifications were independent of one another. Two months later, Long and Aguirre attended a live line-up of five people in which they independently identified appellant as the robber. They also identified appellant as the robber at trial.

On July 4, 1992, at about 1 a.m., a man in a pickup drove up to another fast food outlet in Bakersfield. The man pointed a rifle at the cashier, Ruben Gomez, and demanded money. Gomez called his manager, Kathy Williams, because she had the register keys. Williams arrived and saw the man pointing the rifle. Gomez placed about $100 in a bag and gave it to the robber.

About 30 to 45 minutes after the robbery, Bakersfield Police Officer Schearer observed the pickup driven by appellant within four miles of the fast food restaurant. The officer released appellant after finding no weapons or money in the vehicle. The vehicle also did not match exactly the victims' description.

However, the police did not abandon appellant as a suspect. On the evening of July 4, 1992, Ruben Gomez was shown a photo lineup. He choose (sic) appellant's photo as that of the robber. A few days after the robbery Kathy Williams viewed a photo line-up and identified appellant's photo as the robber. Two months later, both Gomez and Williams viewed a live line-up and independently selected appellant as the robber. They also identified him at trial.

Exhibit "4" to respondent's answer, slip opinion pp. 3–4.

█ In addition to the above, following petitioner's arrest on the evening of July 4, 1992, Ruben Gomez identified the pickup being driven by petitioner as the one used in the robbery and also identified the jacket being worn by petitioner as the one worn by the robber. At trial, Gomez identified a photo of petitioner's pickup as the one used in the robbery. RT for 12/28–30/92, 122–126.

The above evidence is more than sufficient to establish by clear and convincing evidence that the in-court identifications by each of the four eye-witnesses, Mark Long, Santiago Aguirre, Ruben Gomez and Kathy Williams, was based on observations other than the challenged live lineup identifications. Petitioner has failed to show the existence of a reasonable probability that had trial counsel objected to the identification testimony of these witnesses, their identification of petitioner based on those other observations would have been excluded. Petitioner has, therefore, failed to establish the second prong of the *Strickland* test; a reasonable probability that but for trial counsel's deficient performance, the result of the trial would have been more favorable.

In addition to the above stated reasons for rejecting each of petitioner's claims, Title 28 U.S.C. section 2254, subdivision (d), as amended effective April 26, 1996, provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Jeffries v. Wood,* 114 F.3d 1484 (1997) at page 1498, the Ninth Circuit noted:

Under the amendments to chapter 153, federal courts must restrict their legal analysis to whether the state decision was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Act further restricts the scope of federal review of mixed questions of law and fact. 28 U.S.C. § 2254(e). De novo review is no longer appropriate; deference to the state court factual findings is.

In the present case, the California Supreme Court denied, without a statement of reasons or citation of authority, petitions for review of the Court of Appeal's decisions rejecting petitioner's claim of *Griffin* error presented on direct appeal and denying his claim of ineffective assistance of counsel presented in petitioner's habeas petition. Such "silent" denials are deemed to be adjudications on the merits. *Hunter v. Aispuro,* 982 F.2d 344, 347–348 (9th Cir.1992); see also *Miller v. Rowland,* 999 F.2d 389 (9th Cir. 1993). Petitioner has not shown that the state court's decisions were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the instant petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).